COMMERCIAL BANK IN PANAMA CITY, *et al.,* v. ATLANTA & ST. ANDREWS BAY RAILWAY COMPANY.

162 So. 512.
Division B.
Opinion Filed June 22, 1935.

168

*J. M. Sapp* and *H. P. Sapp,* for Appellants;

*A. G. Powell* (Atlanta, Ga.) and *Howard S. Bailey,* for Appellee.

Buford, J.—The order appealed from requires the appellant to produce for inspection by the complainant, its agents and attorneys at such reasonable times and not to interfere with the transaction of business of defendant, certain books, documents, records and papers which were specifically described in the order and which books, documents and papers constituted records of account between the Bank and one George A. Barnes.

The suit was one for accounting instituted by the appellee against George A. Barnes and his wife, Jessie G. Barnes, Commercial Bank in Panama City, a Corporation, Roy Van Kleeck, trading and doing business as Van Kleeck

Company, Gulf View Lumber Company, Inc., a Corporation, M. J. Williamson and Commercial Bank of Panama City, a Corporation.

It was alleged in the bill of complaint amongst other things that George A. Barnes was depot agent of the complainant and that he collected fees and charges due to the complainant and receivable by the complainant as a common carrier of freight; that the Bank, through its officials, was cognizant of the position held by George A. Barnes and of the fact that George A. Barnes received the moneys referred to in trust for the complainant; that George A. Barnes deposited large sums of money in the Bank in his own name which sums of money he had no right to deposit there and that the Bank, through its officials, knew that the said George A. Barnes was converting to his own use and embezzling the funds belonging to the complainant; was depositing complainant's money in the Bank in his own name and drawing out on his personal check for his own use and benefit and that yet the said Bank permitted said practice to continue.

The bill alleges specifically:

"Despite the fact that the plaintiff has requested the said Commercial Bank in Panama City to permit plaintiff to see and examine the depositor's account of said George A. Barnes with such bank and for information respecting the nature and amount of same during the period of time when the said George A. Barnes was the agent as aforesaid for the plaintiff, said Bank has refused to plaintiff such examination, inspection and information, and the only information which the plaintiff has been able to get from said Bank respecting the account of said George A. Barnes with it was given to one of plaintiff's officials on or about May 31, 1933, to the effect that the said George A. Barnes had such an

account with it, that it had been a very active account, but that he had withdrawn the money to his credit in said Bank except a small sum thereof. For this reason plaintiff is not able to allege the amount of its said money which said George A. Barnes, during the time when he was plaintiff's agent as aforesaid, so deposited to his own credit in said Commercial Bank in Panama City or Commercial Bank of Panama City and withdrew from said account and used for his own benefit, but on information and belief alleges the amount thereof to be in excess of the sum of $12,500.00. The plaintiff would show this Court that as to this sum which plaintiff has herein alleged to have been misappropriated by the said George A. Barnes through the device of depositing the same in said Bank and withdrawing same on his checks, the allegation in this respect is subject to this exception and qualification and addition, to-wit:

"Not having access to said George A. Barnes' deposit account in said banks, it does not know whether all the sums of money which said Barnes misappropriated as aforesaid through the use of said banks were actually placed to his credit or not in said Banks, or whether in such instances wherein said Barnes took checks or drafts payable to the plaintiff or payable to himself as agent of the plaintiff, the amount of the same was placed to the credit of the said Barnes in said Banks, or were paid to him in cash, or were otherwise misappropriated by him with the use and facilities of said Banks; that the allegation as to the said sum in excess of $12,000.00 is to be taken as meaning that said Barnes with the facilities which said Banks extended for his use and benefit, misappropriated according to the information and belief of the plaintiff, more than $12,000 of money (or checks or drafts representing money), received and held by said Barnes as agent for and in trust

for plaintiff, and this misappropriation and embezzlement of money by said Barnes was accomplished by means unknown to this plaintiff and known to said George A. Barnes and said Commercial Bank in Panama City and Commercial Bank of Panama City, but consisting in said money, or the proceeds of checks or drafts representing money, being deposited to the account of said Barnes in said Banks and withdrawn by him for his personal use and benefit, or by the amount of such checks or drafts being paid to said Barnes in cash by said Barnes, or otherwise being misappropriated, or by a combination of all or any of these methods. Plaintiff alleges that when the Commercial Bank in Panama City and Commercial Bank of Panama City extended to the said George A. Barnes its aid and facilities at and during the period of time said Barnes was misappropriating said sums of money of the plaintiff in excess of $12,500 as aforesaid, said Banks had knowledge of certain facts, to-wit:" * * *

The bill then alleged that Barnes was a man of limited means, if not entirely insolvent. The bill further alleges:

"That said Banks well knew they had no authority from the plaintiff to cash checks or drafts in the hands of the said George A. Barnes as agent of the plaintiff, which checks or drafts were payable to the plaintiff or showed on their face to be payable for the benefit of the plaintiff; and the said Banks well knew that the proceeds payable on such checks or drafts represented moneys held in trust for the plaintiff by the said George A. Barnes.

"The plaintiff therefore alleges that the defendants, Commercial Bank in Panama City and Commercial Bank of Panama City, with knowledge that the said George A. Barnes was misappropriating the money of plaintiff as aforesaid, or, possessed of such facts that had it exercised

the diligence and caution required of it in the conduct of its general banking business would have acquired knowledge that the said Barnes was misappropriating plaintiff's money as aforesaid, and as a result of its gross negligence, as above set forth, aided and assisted the said George A. Barnes to misappropriate plaintiff's money as aforesaid, the effect of which constituted collusion between said Barnes and each of said Banks, to the great injury to the plaintiff as herein set forth."

Other pertinent allegations are contained in the bill of complaint, but these allegations we think it unnecessary to quote for the purposes here involved.

Section 49 of the 1931 Chancery Practice Act provides as follows:

"Section 49. Production of books and writings for inspection or at Trial. On the motion of any party, after reasonable notice, the court may order any other party or parties to produce books, records and papers containing or believed to contain evidence pertinent to the cause of action or defense of the movant which are in the possession or control of the party or parties named in the motion and order, either for inspection before or use at the trial, at such time or times and under such reasonable terms and conditions as may be prescribed by the court in its order on such motion."

The record shows that adequate notice as contemplated by the above quoted section of the statute was given. In Therrell, as Liquidator, v. Howland, 108 Fla. 299, 146 Sou. 203, this Court, speaking through Mr. Justice DAVIS, said:

"Undoubtedly Section 49 of the 1931 Chancery Act is broad enough to enable the Chancellor, *on motion*, in any pending cause, to order any other party or parties to pro-

duce either before himself or before a master, books, records and papers containing *or believed to contain,* evidence pertinent to the cause of action of the movant, which are in the possession or control of the party or parties named in the motion and order."

Not only is this section broad enough to enable the Chancellor on motion in any pending cause to order any other party or parties to produce books and records before him or before a Master in Chancery, but it is also broad enough to enable the Chancellor on motion after notice in appropriate cases to require an adverse party, or parties, to produce pertinent books, records and papers for the inspection of parties to the cause desiring the same before the trial. In the instant case that is what is sought. The bank is a party to this suit. It is charged in the bill of complaint that the bank assisted Barnes in the misappropriation of the complainant's money; that the bank has in its possession records which are the same records which the order appealed from requires the bank to produce and which will show amounts, the character and the dates of the misappropriations. Therefore, it is clear the evidence sought by inspection of the bank's records is that which is pertinent to the case of the movant.

It is true that it has been generally stated that under Section 2733 R. G. S., 4405 C. G. L., and under Sections 724 U. S. R. S. Secs. 636 Title 28 U. S. C., the party seeking inspection of documents is not entitled to have them before trial. Sinclair v. Gray, 9 Fla. 71; Carpenter v. Winn, 221 U. S. 533, 35 Law Ed. 842.

Section 49 of the 1931 Chancery Practice Act, however, expressly provides that the production of books, documents and papers may be required for inspection before trial as well as at the trial. It was the evident purpose of the

Legislature to provide the means by which a litigant could acquire the information wrongfully withheld from him by his adversary.

It cannot be contended that the bank may not be required to produce the particular books and papers ordered for inspection by the complainant, its agents or attorneys, upon the ground that thereby the bank may be required to produce incriminating evidence against it.

In Wilson v. U. S., 121 U. S. 361, 55 Law. Ed. 771, the Supreme Court, speaking through Mr. Justice HUGHES, after discussing the law and decisions relating to the production of public records, said:

"The fundamental ground of decision in this class of cases is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production, although their contents tend to criminate him. In assuming their custody he has accepted the incident obligation to permit inspection.

"What, then, is the status of the books and papers of a corporation which has not been created, as a mere instrumentality of government, but has been formed pursuant to voluntary agreement, and hence is called a private corporation? They are not public records in the sense that they relate to public transactions, or in the absence of particular requirements are open to general inspection, or must be kept or filed in a special manner. They have reference to business transacted for the benefit of the group of individuals whose association has the advantage of corporate organization. But the corporate form of business activity with its chartered privileges, raises a distinction when the authority of government demands the examination of books.

That demand, expressed in lawful process, confining its requirements within the limits which reason imposes in the circumstances of the case, the corporation has no privilege to refuse. It cannot resist production upon the ground of self-crimination. Although the object of the inquiry may be to detect the abuses it has committed, to discover its violations of law, and to inflict punishment by forfeiture of franchises or otherwise, it must submit its books and papers to constituted authority when demand is suitably made. This is involved in the reservation of the visitorial power of the State, and in the authority of the national government where the corporate activities are in the domain subject to the powers of Congress.

"This view, and the reasons which support it, have so recently been stated by this Court in the case of Hale v. Henckel, *supra,* that it is unnecessary to do more than to refer to what was there said (pp. 74, 75)."

Neither is it tenable to say that the defendant may not be required to produce the books, documents and papers ordered because they are privileged matters and come within the scope of privileged communication. The contrary has been almost uniformly held. See Hamilton v. Plunkett, 136 Ga. 72, 70 S. E. 781; *re* Davies, 68 Kans. 791, 75 Pacific 1048; Winder v. Diffenderffer, 2 Bland Ch. 166; I. C. Comm. v. Harriman, 157 Fed. 432; *re* Lathrop, 184 Fed. 534; Loyd v. Freshfield, 2 Car. & P. 325, and cases cited in these opinions. See also note in Hamilton v. Plunkett, 35 L. R. A. (ns) 583.

It is contended that the order should not have been granted because it was in furtherance of a "fishing" expedition. This, too, is untenable.

The bill alleges definitely and unequivocally that the defendant, Barnes, being in possession of certain funds be-

longing to the complainant, wrongfully and without authority deposited such funds to his own account in the defendant Bank; that the defendant Bank was cognizant of the wrongful and unlawful act of Barnes and that Barnes drew the funds out of the Bank for his private use, converting them to his own use and that he did so with the full knowledge of the Bank that he had no right to handle such funds. That the Bank by allowing the course of dealing through its facilities as a banking institution did aid and facilitate the embezzlement of the funds and that the Bank has refused the complainant the information which the Bank has with reference to the transaction by Barnes with the complainant property and money.

There can be no doubt that the complainant is entitled to have the benefit of the information which will be disclosed by the records of the Bank as reflected by the entries of the Bank concerning its transactions with the defendant Barnes.

In Bannon, *et al.,* v. Trammell, 96 Fla. 408, 118 Sou. 167, we held:

"In a suit for an accounting, where the facts necessary for a proper and equitable decree are peculiarly locked in the breast of the defendant, the court can compel discovery either by an answer to the bill of complaint or by answering interrogatories propounded."

Now the complainant seeks to get from the records of the Bank not evidence that the money belonging to the complainant had been misappropriated and embezzled by Barnes, or evidence that the transactions occurred, or evidence that transactions were had with the Bank involving this embezzled and misappropriated money. All these facts are alleged in positive terms in the bill of complaint by allegation sufficient to require answer. But it seeks to get from

those records the evidence of the exact amounts of the funds embezzled, the dates upon which they were converted and other material evidence material and pertinent to the allegations of the bill of complaint. It is not sought to learn whether or not a wrong has been committed, but to get the proof of how and when the wrong was committed. This is not "fishing."

We think that the conditions named in the order are reasonable. The order comports with proper conditions which may be imposed under the general precepts governing in chancery cases and we find no reversible error disclosed.

The order appealed from should be affirmed.

It is so ordered.

Affirmed.

Ellis, P. J., and Terrell, J., concur.

Whitfield, C. J., and Brown and Davis, J. J., concur in the opinion and judgment.